case. That's when we proceed. Morning, justices. Even though I've come down and argued, I'm always nervous when I first start arguing a case. So and I'm a pound of caffeine, so if I speak fast, I apologize. I realize in this case, I appeal the case that's a guilty decision from the trial judge. And so rest assured, I realize that I have a high burden to try to overcome. There's no doubt about it. I mean, in the light most favorable to the state, was it improbable? Was it unsatisfactory? Was it inconclusive? In my statement of facts, I tried to line out a number of what I call either inconsistencies or oddities in the facts that were presented at the trial court. And first off, there's three officers who testified to this case. There are no. Officer Trey said he followed the defendant for either a half mile or a mile, depending upon direct or cross-examination at the time. He said he did not observe any type of improper turn on Boughton when he turned on Boughton. He did notice an improper turn when he turned on to Ashbury off Boughton. So when this first turned on to Boughton, there was no improper lane usage. There's no lane crossing. There's nothing usual with the way he turned. At the next corner, and again, it's unclear if he was a quarter mile or a half mile away, his distance, and I put to the court, it's not a matter of a two or a four, but that's rather significant. I mean, a quarter mile away to a half mile, even a quarter mile is quite a few blocks away. So the question was put to him, did you hear screeching of tires? Because his testimony was he heard screeching of tires. Two cars had to come to a sudden stop when he turned left. But in his transcripts, I don't recall if I did or didn't. Now, again, one said he said he did. He doesn't recall if he did or didn't. When he's when the officer's at the corner of Ashbury, he obviously loses sight of the vehicle, which were about 30 seconds. Then he finds the vehicle and goes up to the vehicle itself. And again, little things like knocking on the window, trying to get his attention when he comes up to the vehicle. He doesn't know whether or not he knocked or not. Well, that's something that you would, again, which he said in his testimony, that I think if you're just chasing somebody who heard screeching of tires, you would knock, you'd be forcibly yelling and screaming. But he didn't recall. He did ask him drinking. He said he was drinking beers while fishing. But what I find a little uneasy is the fact that, well, how much? When did you have your first one? When did you have your last one? I didn't hear that those questions were asked. And granted, I was not the trial attorney who did this, but I didn't hear those, you know, when did you have your first one, when did you have your last, which would be key factors as to ounces, duration, time, etc. Speech. He said he barely spoke, but there was nothing wrong with his speech and 31. And previously, whenever I say he said this in this part of the section and another section, it's different. When he exited the vehicle, he exited the trolley, I guess when there's a little confusion as to exiting the vehicle once or twice with or without a backup officer present. And so it appears may have exited at one time, may have stumbled beer cans, threw them over a fence. I can only imagine for keeping cans of beer cans or recycling. But the second time, that's littering, isn't it? Except if it's your own yard. Was it? I believe that he said he was parked in that driveway. I don't know if the evidence presented said that it was at his house. I presume. But, you know, one man's garbage is another man's art. So I always know he was in the driveway. He was in the driveway. Yes. That again is correct. You are correct. But still, in all, it could have been littering as just as I said, it was like 400 beer cans or something on the other side. Yes, it would tend to me to say that it was like a cycle pod, but so he was throwing them over. But the second one was, did he almost fell as getting out of the vehicle or not? Well, one point he is and there was confusion if it was the first time he exited the vehicle or the second time he exited the vehicle. He asked him to perform standard field sobriety tests and refused. I know the courts are too many cases that would appear to number, but usually when he asked to form field sobriety, sometimes they ask, well, why aren't you doing it again? Much like how much alcohol you consumed? We don't know. And you can infer, but you still don't know what you don't know. Never asked for injuries. Never asked why he why would the officer request him to take field sobriety tests, except for the obvious? He really didn't say. Now, walking towards the squad car, there's nothing unusual about the way he walked towards the squad car. There's no swaying again. I'm in cases like this. It appears that the argument centers around every little point to say that he has he's impaired, putting him on a pedestal to say that some reason he fell initially, he should be impaired. I smelled alcohol. I didn't. He should be impaired. But on the same token, I say that you put the officer on that same pedestal to what has he testifying to for indicia of impairment. Again, walking towards the squad car, nothing, no swaying. There was a strange testimony regarding an arrest video. The question was, you know, the officer's testimony when after the backup arrived is that the defendant had some trouble. Almost fell when he got out of the thing. But then on cross-examination, he said there was no problem. And then later on, he says there was a problem. And again, I couldn't put all the inconsistencies in my statement before the court, but there was numerous ones. And and then I go to the arrest video. Well, the question was asked, is the video for the arrest show any signs of impairment or words to that? There was an objection about you keep talking about officer officer. How many officers are there? And initially there was one. And then there was office. And then there was officer Higgins. I believe officer Kinsella may have been there, but he was at the station. Who did the stop officer trace trees? And I believe officer Higgins. And she was the last one to testify in the record. I believe it's sixty one to sixty seven. She said when he did the vehicle, there's nothing unusual. He picked him up. No difficulty standing. No swing. Nothing usual. But to simplify, you've got Higgins here. This is an ordinary exit. Don't see anything unusual about his behavior. His eyes or speech. OK, we have over here can sell and trees. And what do they say in one point can sell for trees says he didn't have. I believe there was nothing wrong with his. He barely spoke, but there was nothing wrong with it on page 31 of the 31 or 32 of the transcript. But then later on, he said it's in a different portion. I believe he said he had slurred speech. And so I get conflicting statements from trees. And then you go. What happens is if the word app reported out, can sell a bag at the station said a glassy, bloodshot eyes, slurred speech, partially. Sorry. Officer can tell it was at the scene. I apologize. Because he said he found a partially consumed can of beer in the car. Now, again, how do you get a partially consumed can of beer? Usually, again, before the court, beer cans are usually come across as saying cold to touch. Why didn't hear that? So partially consumed leaves the opinion that he just consumed it. But again, there's no evidence of that because we know that support illegal transportation of alcohol, legal transportation of alcohol was not guilty. But you just have testimony. There was a partially consumed can of beer. I'm not again. Right. I'm just asking that question. And then the words of he used kind of again, officers and sell statements kind of baffled me is how to come to the conclusion. I did not do the trial. How could you come to the conclusion that was partially consumed? It better have said it was partially filled. Partially consumed logically means that there's still liquid left. Well, partially consumed also means that it was just recently consumed. Yeah, but I'm still going to a drop charge of illegal transportation. And then again, and I'm figuring that the that we don't know if what was in the can itself, especially if it's found underneath the seat. But realistically, how much could be in there? I'm just assuming the seats are that tall. And that's not saying it's got to be standing down. If it's standing down, you can only have so much liquid. And by the way, it's my understanding. And so the console was both at the station, but also at the stop. Correct. Yeah. And that's why I said to just the soldiers. He describes it a different actions. Yes. So we have we have this is the state's case. The state put on these different factions and the state and all the respect the states want to nitpick on factors they like. But disregard factors that they don't put the defendant on a high pedestal. And I'm saying that the officers should be just on this high pedestal standard of review. God, I believe it's in the light most favorable state. And again, when I approach, I said, I'm not doubting that I have a high standard to overcome. But I'm saying these are their inconsistencies. These are the defendant always has the presumption of innocence. But when you present this type of evidence going back and forth, back and forth, which contradicts each other. That in itself should say doubt. And isn't your argument that we only have one officer here who consistently testifies to apparently no impairment? Is that it? And that these other two officers are radically inconsistent with each other and with themselves? Thank you. And I'm not. And I read the transcript and I just found it alarming, especially when he's when, again, I call nitpicking when they're at the station. And I believe Kinsella said that he wasn't paying attention to my directions when I was fingerprinting him. But on cross, it said because Officer Trace was standing next to him talking to him. And I just found it a little bit disheartening when you're saying you're not paying attention, didn't say why. And so with that, I think I have found this to be so improbable, so unsatisfactory, so inconclusive that I respectfully submit to the court with the contradictions in there. And that's I actually I think I wrote a longer statement of facts than I did my actual argument trying to bring out, as well as he wrote a very extensive motion to reconsider trying to outline those facts that I think a just outcome would be a reversal. And any further questions? Thank you. Good morning. May it please the court. Counsel. My name is Jasmine Morton. I represent the people of the state of Illinois in this matter. Viewing the evidence in the light most favorable to the people, all elements of the offenses, both for DUI and improper lane usage, were proven. A judgment should only be overturned when the evidence is so unreasonable or so improbable as to raise reasonable doubt of defendant's guilt in this matter. Trial judge did not err in finding that defendant had committed improper lane usage. The officer was, Officer Treacy, was following the defendant or traveling down the same roadway as him, saw him make this left turn that required two cars to jam on their brakes. So officers thought that was odd and possibly a violation of the vehicle code. He pulls behind the defendant who's pulled into a driveway, knocks on the window trying to get the defendant's attention. He wasn't sure if he knocked on the window or not. Well, he was trying to get the defendant's attention. He was trying to get his attention. He's not sure if he knocked or not, though, is he? Correct. Correct, Your Honor. But in that time of him trying to get his attention, standing at his window, it took him about 30 seconds to roll down the window. I mean, in this case, we have, I think it's Treacy that was the first person. Yes. That's who made the stop. Arrived. She doesn't give any of the indicators of being under the influence, right? Her testimony was he didn't have blurry eyes. You know, I'm sort of paraphrasing, but she said things that were favorable on the defendant's behalf. And then you got Kinsella who arrived last. Correct. You got Kinsella finding everything, blurry eyes, smell, right? Correct. So what Officer Treacy observes is the defendant, in his words, being unresponsive in terms of rolling down his window. The defendant admits to consuming alcohol that day during his fishing trip. Then when the defendant gets out of the car, beer cans fall out. Officer Treacy observes this. Officer Higgins observes this as well. Seeing beer cans fall out of your car and then you toss them over a fence as though there is nothing odd about that. Whose house is this? There is testimony that this is the defendant's house. I know in other parts of the testimony it becomes a little unclear as to whose house it is, but it's our position that it's the defendant's home. So what does that have to do with anything? The fact that beer cans fall out of your car and you – What about the tossing? Focus on that. You didn't charge him with littering. No, and he very well could have, but – That's his property, perhaps not. Perhaps it is. It could be a recycler. It could be, but the fact that they are beer cans falling out of his car and the defendant has alcohol in his breath and admits to drinking – He doesn't have alcohol in his breath. According to Officer Treacy, he does. Alcohol, does it have an odor? Yes, it does. Alcohol does? Alcohol does. No, alcoholic beverage does. Well, alcoholic beverage on your breath admits an odor. Do you understand the difference? The fact that some alcohol does not have an odor and others do, I would assert that beer generally does have an odor. Well, it's properly the odor of an alcoholic beverage. Yes. Because alcohol, pure alcohol doesn't have an odor. Yes, yes. So – Hopefully he wasn't drinking pure alcohol. Hopefully, but that is – No smell? The same alcohol cans, cans of beer fall out, and the judge makes a finding that the condition of them, whether there was any – it wasn't enough to satisfy the elements for illegal transportation of alcohol. Right. But yet, then how is it evidence of contemporaneous or drinking in a timeframe that would make him intoxicated or impaired, I guess impaired? I think when we look at the totality of the circumstances, the way the defendant made the left turn, causing other cars to stop immediately when he is supposed to yield to oncoming traffic, the fact that it's taking him time to roll down his window when he can see that someone's standing outside of his car window trying to get his attention, the officer stating or testifying that there's alcohol, an alcoholic beverage odor on the defendant's breath, he gets out of the car, beer cans fall out, he's refusing to submit to a breath test, refusing a field sobriety test. Some total of all those events would lead the officer to believe that this person is, in fact, intoxicated. And then when we get to the station, one of the officers, Kinsella, says that the defendant has difficult time responding to his commands. And the other officer talking to him about fishing and, you know, is constantly saying – and sort of to one side of him and saying, you know, talking about, you know, fishing or something in the – I mean, it sort of seems to be a little disingenuous when it's one police officer's – who are you supposed to respond to or not respond to, I guess, in that circumstance? I mean, even though one seems to be more social and the other with the fingerprints, but, I mean, you're still talking – maybe being directed by law enforcement or maybe he felt that. I mean, do you think that's fair? Well, when we look at the video, it is very hard to hear any audio. You can only see what is happening in the video. And it's clear that one officer is to the side of the defendant, but it's not as clear as to who is speaking to him. So just basing it off of Officer Kinsella's testimony that the defendant had a difficult time comprehending or listening to his instructions is – was more instructive to the trial judge as to what actually occurred versus a video where we don't have much audio evidence, just visual. And the video, is there showing distraction by someone else, regardless of the lack of audio? It shows the officer standing next to him. I can't honestly see anyone's mouth moving. I'm assuming that they're giving him directives, but I can't – it doesn't appear that he is distracted by another officer. So, again, when we look at the sum total of the events, the officer had reason to stop the car, reason to believe that the defendant was, in fact, under the influence of alcohol after he admitted to drinking that day, and then there's all these additional signs of him not willing to comply with the field sobriety test or portable breath test for the defendant. Now, the refusal to comply with the field sobriety test, is that dispositive of anything, or what inferences can or cannot be made from that? I think a lone looking at the field sobriety test, an unwillingness to take them, it's not a lone dispositive of being under the influence, but when we look at the sum total of the events, it is one of the indicators that this individual is under the influence of alcohol and had just been driving. Well, how could that be? What is – so an inference can be made that you're under the influence of alcohol and impaired if you refuse to take the field sobriety test? That, along with other factors that are displayed, his refusal to take a PVD test, his throwing beer cans that were just falling out of his car over a fence, and I would draw the inference, although the trial court did not say this, that he was trying to get rid of evidence of him drinking, even though it's over a fence that you can, I'm assuming, see through, and the fact that he has alcoholic beverage on his breath. All of those things together show that defendant was under the influence of alcohol. So what – I don't have the vehicle code in front of me, but improper lane usage, what was the action of the improper lane usage? So under the statute, the driver of a vehicle intending to turn to the left within an intersection or into an alley, private road, or driveway shall yield to the right-of-way to any vehicle approaching from the opposite direction, which is so close as to constitute an immediate hazard. And the fact that those two cars that were – So, okay, I'm just thinking, which lane is improperly being used? The fact that he is turning from one side of the street onto another street and presumably cutting off two cars, not waiting the appropriate time for those cars to pass, was the improper lane usage, the fact that he is crossing over more than one lane. Okay. All right. I also get a failure to yield, possibly. I'm just thinking. And my other question is, is why was there a dismissal by the state of the – or at least what you're thinking when you have evidence there of partial consumption of beer, but there's not an illegal transportation? I think the testimony as to how much beer was left in the can, if it was deemed just a few drops or if it was just a sip taken out of it, that part was unclear to the trial judge. Is there any amount required? I don't believe so. Just within the statute, it says partially consumed, or if there's any – an open container in your vehicle. And I'm – That testimony, there was an open container. Yes, there was testimony as to that. It was partially consumed. Correct. And I really can't wager a guess as to why the trial judge didn't find the defendant guilty as to that particular case. So in this case, the trial judge, in finding the defendant guilty at the DUI. Yes. Stated that the court – and the trial judge recited some of the evidence, and then he concludes the court nevertheless finds while not complete and total comprehensive circumstantial evidence on every component to prove defendant's guilt, there nevertheless is more than sufficient to prove the defendant's guilt beyond a reasonable doubt. And the – you know, he finds that the defendant was driving, and then he says the defendant falling, losing balance, was described and testified out of the vehicle. Now, there's contrary evidence from the three officers about that. I mean, at one point, you've got the original officer, Therese, saying there was some problems. Then no problems. He had balance and so forth and so on. You know, that was, I think, brought out in some of the cross-examination. Then the judge went on the fact there's a circumstantial evidence of alcohol container in the car, although perhaps not full of containing any liquid. Nevertheless, the presence of containers is circumstantial evidence. Then he concludes, obviously, the circumstantial evidence, though not consistent from the encounters that each officer had, because there's inconsistent testimony. Kinsella is the only one who keeps on saying, you know, the testimony you see in every DUI case, you know, the smell of alcohol, the blurry eye. You know, Kinsella does it, does it all. Higgins doesn't. Is that right? Higgins is not like that. Her testimony is not like that. The main thing that Higgins discusses that does show an indication, or it's the state's contention that shows an indication of a defendant being under the influence is the cans falling out of the car and witnessing the defendant put the cans out. But that's it for Higgins, right? Correct. I would say that the seeing of the beer cans being thrown over the fence was probably the most. For Higgins? Yes. So the judge concludes that circumstantial evidence, though not consistent from the encounters that each officer had, because there's inconsistent testimony, but nevertheless sufficiently consistent of the smell of alcohol. And again, their officer said they didn't smell alcohol in his breath. You know, when he got out. She smelled alcohol in the room. Okay. And the judge is basing it on the defendant's demeanor and conduct throughout the course of the encounter to support the defendant being impaired. And there was inconsistent testimony from these Higgins and Treece, not Kinsilla, about he had balance, he had, right? Isn't that testimony that they didn't see any swaying? Right. Officer Treece sees him stumbling, getting out of the car, or as if he's about to fall. I'm getting out of the car. But there is no. A bit. But the most. The common theme throughout all the officer's testimony is that they see him get out of the car, the beer cans are thrown over the fence. The initial stop performed by Officer Treece, he smells the alcohol when he's talking to the defendant. He sees the defendant being unresponsive and not getting out of the car immediately or not responding to the officer immediately. And when it comes to the weight of the evidence or the credibility of those witnesses, that was weighed by the trial court in our ability to look at this cold record and not have the actual squad car video of what occurred at that time. The only video that we have is. Part of the reason I'm asking this question is because on direct examination, Treece says why he thought he was drinking. But then across, Treece stated the defendant had no difficulty getting out of the truck and had no balance problems reaching down and throwing the beer cans and that there was nothing wrong with his speech when Treece spoke to him. Right. That is consistent that there was no issue with defendant's speech. And his ability to relate information to the officers is as part of the evidence that was weighed. But then we have on the other side the fact that there's the alcohol in his breath. It's his refusal to do the test. I think we ought to be all precise here. Of alcoholic beverage. An odor of alcoholic beverage. The fact that he's refusing these tests, it's all indicative of the fact that defendant was actually under the influence of alcohol. And the fact that he made this left turn cutting off two cars coming towards him are all indicators that he was actually under the influence at the time that he was operating the vehicle. So in the Treece, he says that he had no balance problems. He had none of that. This is a cross-examination. Yet on direct examination, the basis for the charge was when I first made contact, he could smell alcoholic beverages. He had trouble getting out of the car and almost fell. And then he threw the cans over the fence. Right. And the fact that he's been refusing. Right. And the fact that the officer had a suspicion that the defendant had been drinking and then the defendant refuses all subsequent offers to give him tests to disprove the fact that he is under the influence and impaired in his driving. Defendant refused. No. Not a burden to disprove it, but when we look at the sum total of the events, defendant showed indications of being under the influence and it's the people's position that it was proof beyond a reasonable doubt and the trial judge correctly found or properly found that the defendant was under the influence and that there was improper lane usage. Sorry. The officer Treece's car wasn't equipped with a dash cam video? It was, I believe it was, I'll say this, Your Honor. On appeal, it was not provided in our record that there was a squad car video for all of us to view. So I believe there was a video at the trial court level. I am not sure if it was actually submitted into evidence or if it was submitted into evidence, it was not provided on appeal. And the officer, I'm sorry, just to close out, the trial judge refers to the scant videographic evidence in this case to make his decision. We just ask that you affirm. Thank you. Counsel. Negative. What are the reasonable inferences from the refusal to take a field sobriety test or breathalyzer? Can there be negative inferences? Reluctantly, I believe you can take it as a negative inference. I'm not going to say that is a negatory. But also in the same instance, the few questions asked could have resolved a lot by asking a simple question. Where were you? How much did you drink? How many cans? How many bottles? He could still have said no to every question. He could have refused to answer. But it appeared he was cooperating. But when they say cooperating in the sense he didn't do field, but he wasn't, his demeanor wasn't, you know, I'm not doing anything. He put his fist down from what I gathered from the transcript of the testimony. But he could have, the officers could have asked a lot more questions. Well, why aren't you going to do a field? I want to do it right here. And there's a lot of cases where they ask, well, questions, where were you, and it opens up a whole Pandora of other issues and questions. But that just wasn't done here. We are very limited. So I don't doubt the court can take the inference, but I'm asking the court to take another inference as a person gets arrested while sitting in a use of that term as they exit the vehicle. But the one point I want to address the court here on this is as to the video. From what I saw in the transcript, the question was asked, does the arrest video show any signs of impairment? I believe the question was, shows any signs of impairment. The officer said it comes to summation that it didn't. There was objections because no video was ever presented in the trial court, an arrest video. And the answer was allowed to stand, that the arrest video did not show any signs of impairment. What is that? How do you take that, Justice? Well, if it's me, you take it as no signs of impairment. But as to what it shows, I can't tell. Now, the state had the ability at that time to, well, let's play the video. They asked that question, let's play it. They didn't. You know, when the trial judge rendered his decision on that, he recognized some of the inconsistent testimony from certain of the officers. But he looked at it, and I'm using my words now, not the judge's words, that I asked your opposing counsel about. He said, taking everything into the trial, there's enough to find this guy guilty, right? That's exactly why we brought it here. And it is true that there are statements, something consistent that Therese makes, that would be foundation for a guilty fine under DUI. And so, certainly, everything Consuelo says is sufficient for a DUI. Trace Higgins is not. Some, though. Some, but not all. And Trace, which says doubt. So with a standard review, you have to show it. It's a tough road, isn't it? Tough, but I think I overcame it. Maybe not, but I believe I overcame it. And the one last thing I want to point to the court, these are three trained individuals. This is not somebody just walking down the street. It's three trained individuals, one trained how to take note-taking, how to testify in court, how to do a DUI arrest. Now, the defendant doesn't have, to use a better term, doesn't have that training or no training to present the evidence. So you base the evidence on three highly trained individuals who can't give straight answers. I'm not saying they fabricate. They just can't give a straight answer except one, Consuelo. But even Consuelo's. What do you mean by a straight answer? Well, I mean they contradict. I said some of them are internally consistent. Inconsistent, yes. Okay, that's better. Straight implies negative. It's inconsistent. So we have Officer Kinsella, inconsistent testimony? As to what he said, except for the fact of complying with his commands, I believe Officer Kinsella was doing the processing, whether or not he was talking to another individual while doing the processing. You know, who was he processing? I thought that, although his other testimony he didn't waver on. I'm not doubting that, judges. But as to that, that was a little, who was he talking to in the booking room when the defendant was not? Well, Kinsella said he observed the defendant with slurred speech. Yes. But no swing or staggering at the scene or in the police department. Okay? Correct. Just said he didn't follow through with simple instructions during booking, such as stand here. And then he turned away, okay, which you're explaining as distraction. Correct. Okay. We have Higgins, who apparently is consistent in all respects. And the only thing Higgins testifies to is seeing beer cans fall to the ground, and she smelled the odor of an alcoholic beverage. She saw no physical impairment. Correct. Or behavioral impairment. And then Truist, consistent or inconsistent? There's inconsistencies in his testimony. I wrote them out as best I could. And, again, I'm not saying that they did something negative. I didn't want to create a negative inference of them. I'm just saying that their inconsistencies lead to doubt. Okay. Truist just observes behavior, seeing cans fall to the ground and throwing cans over a fence. That's it? That's what Truist said? I believe he said a lot more about coming up to him, whether or not he knocked on the window, as the inconsistencies that I previously alluded to in my opening. We've got the testimony of smell of an alcoholic beverage, okay, and the refusal to perform a breathalyzer or field sobriety test. Correct. And then we have this thing, 30 seconds to roll down a window. What does that mean? I should have asked the opposing counsel. What does that go to? Again, I mean, did he think that that was too long? Was he looking up his papers? And, again, what – Was it a power window? Was it a crank window? And I thought the questions there was, at that time, when he was standing next – Truist was standing next to him, and he said he thought he was unconscious. And he said, well, was his head down? No. Was his eyes open? I couldn't see. I was behind him. Well, could he have been looking at documentation? Yes. Well, why would one say that he thought he was unconscious with a man standing there and he couldn't tell whether or not he was looking at documentation? So. Well, I mean, Truist wasn't consistent. I mean, his opinion was how he was – should be charged with DUI. At that point, he says, I could smell alcoholic beverages. He had trouble getting out of the car, and he almost fell. And yet, other testimony is that he had balance from Truist. Correct. So the result – And I wrote up a longer statement of facts. I'm sorry. I wrote a longer statement of facts than I did an argument. But with that, respectfully, I'll leave it there. Thank you, Counsel. Thank you both for your arguments. And so we'll take this case under advisement. Now we'll take a break.